# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9172 | **DATE** | 9/26/2002 |
| **CASE TITLE** | Jenkins vs. Mercantile Mortgage, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP4(a)(2).

(10) ■ [Other docket entry]  Plaintiff's motion to certify class (35-1) is denied. PCFS's motion to dismiss (69-1) is granted as to Count I and denied as to counts III and IX. CST"s motion to dismiss (32-1) is denied as to Count V and Count VI and granted as to count VII. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **9** number of notices |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | SEP 27 2002 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | CV docketing deputy initials |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | 9/26/2002 date mailed notice |
| MPJ courtroom deputy's initials | | Date/time received in central Clerk's Office | MPJ mailing deputy initials |

Document Number

94

CLERK, U.S. DISTRICT COURT

02 SEP 26 PM 5: 31

RICHANNER JENKINS,                    )
                                      )
            Plaintiff,                )
                                      )
    v.                                )       No. 01 C 9172
                                      )
MERCANTILE MORTGAGE COMPANY;          )
PROVIDENT BANK, doing business        )
as PCFS FINANCIAL SERVICES;           )
EQUICREDIT CORPORATION OF             )
AMERICA; VICTORIA MORTGAGE            )
CORPORATION OF ILLINOIS; BELL         )
CAPITAL, INC.; MIRA KOSTIC;           )
CITY-SUBURBAN TITLE SERVICES          )
COMPANY; FIELD'S WINDOWS, DOORS       )
& CONSTRUCTION CORP., and             )
MIRJANA RADOJCIC,                     )
                                      )
            Defendants.               )

**DOCKETED**
**SEP 2 7 2002**

## MEMORANDUM OPINION AND ORDER

Richanner Jenkins sues Mercantile Mortgage Company
("Mercantile"); Provident Bank, doing business as PCFS Financial
Services ("PCFS"); Equicredit Corporation of America
("Equicredit"); Victoria Mortgage Corporation of Illinois
("Victoria"); Bell Capital, Inc. ("Bell"), and its agent Mira
Kostic ("Kostic"); City-Suburban Title Services Company ("CST");
Field's Windows, Doors & Construction Corp. ("Field's"), and its
agent Mirjana Radojcic ("Radojcic"). Jenkins claims violations of
the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), as
amended by the Home Ownership and Equity Protection Act ("HOEPA");

94

the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"); and Illinois law. Jenkins moves to certify a class action against CST. PCFS and CST each move separately to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6). I deny Jenkins' motion to certify a class action against CST. I grant in part and deny in part PCFS' motion to dismiss the claims against it. I grant in part and deny in part CST's motion to dismiss the claims against it.

## I.    Facts

Jenkins is a 65-year-old African-American woman who resides in a home that she owns in Chicago. Am. Compl. ¶ 3. In November 1999, Jenkins signed a contract for home improvements with Field's, Am. Compl. ¶ 15, and retained Victoria as her mortgage broker, Am. Compl. ¶ 17. On December 27, 1999, Jenkins obtained a $101,250 sub-prime fixed rate mortgage loan from Mercantile, a mortgage broker and originator, for home improvements ("the 1999 mortgage"). Am. Compl. ¶¶ 4, 18. CST conducted the closing. Compl. ¶ 21. As part of the loan process, Jenkins signed standard forms including a Truth in Lending Disclosure statement, Ex. D, and a settlement statement on a HUD-1 form, Ex. E. Am. Compl. ¶ 22-23. According to the HUD-1, CST collected $37.50 for recording a mortgage and $55 for recording releases, which total $92.50. Am. Compl. ¶ 25. According to the Truth in Lending Disclosure statement, CST collected $116 for the mortgage recording and release services, but it disbursed only

2

$33.50 for recording a mortgage and nothing for recording releases. Am. Compl. ¶ 26.

Prior to the closing, the loan was sold to PCFS and an assignment of the mortgage was prepared on December 27, 1999. Am. Comp. ¶ 27. The loan documents sent to PCFS pursuant to the assignment, including the Truth in Lending Disclosure Statement and HUD-1, were materially different from the original loan documents. Am. Compl. ¶¶ 28-31. Jenkins claims that Victoria received an illegal $759.37 "yield spread premium" in violation of RESPA. Am. Compl. ¶ 74. Jenkins also alleges that the 1999 mortgage violated TILA because it failed to make mandatory disclosures regarding interest and payments, Am. Compl. ¶ 38, and because it did not expressly exclude a prepayment penalty for refinancing by the same creditor, Am. Compl. ¶ 40.

Field's then approached Jenkins and convinced her that more money was required to complete the contracted work. Am. Compl. ¶ 44. On June 8, 2000, Jenkins obtained a $134,400 mortgage from Mercantile ("the 2000 mortgage"). Am. Compl. ¶¶ 45-48. The 2000 mortgage was used to pay off the 1999 mortgage. Am. Compl. ¶ 48. Jenkins alleges that the note for the 2000 mortgage included an unlawful prepayment penalty in violation of TILA regarding the 1999 mortgage. Am. Compl. ¶ 51.

The work that Field's contracted to perform was never completed. Am. Compl. ¶ 42. Jenkins alleges that Field's pocketed

3

more than $70,000 after completing approximately $19,000 of work which will cost $17,000 to complete. Am. Compl. ¶ 42.

## II.    Class Certification

Jenkins moves to certify a class of all persons from whom CST collected money for disbursement to governmental agencies that was not in fact so disbursed on or after November 29, 1998 (Count V), November 29, 1996 (Count VI), or November 29, 2000 (Count VII).[1] A class action must satisfy all the requirements of Fed. R. Civ. P. 23(a) and at least one of the requirements of Rule 23(b). *Burke v. Local 710 Pension Fund*, No. 98 C 3723, 2000 WL 336518, at *2 (N.D. Ill. Mar. 28, 2000) (Hibbler, J.). There are four Rule 23(a) requirements: (1) numerosity (the class must be so large "that joinder of all members is impracticable"); (2) commonality (there must exist "questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses must be "typical . . . of the class"); and (4) adequacy of representation (the representative must be able to "fairly and adequately protect the interests of the class"). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Each of these prerequisites must be met in order to maintain a class action suit. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). The party seeking class certification bears

---

[1] Although Jenkins failed to mention Count VII in her motion for class certification, she included the class allegations relative to Count VII in her Amended Complaint, Am. Compl. ¶ 109, and included Count VII in the arguments in her reply, Reply at 1, so I assume she means to include Count VII.

the burden of demonstrating that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). I generally should "consider certifying a class or deny certification prior to any ruling on the merits." *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997).

CST argues that Jenkins is not an adequate class representative and that her claims fail to fulfill the commonality and typicality requirements, but fails to address the numerosity requirement. Although defenses not brought in response to a motion are ordinarily waived, I address the issue of numerosity because it is dispositive.

I may rely on common sense assumptions or reasonable inferences in determining numerosity. *Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000) (Bucklo, J.). A plaintiff must "provide some evidence or reasonable estimate of the number of class members, however, if the plaintiff is unable to provide the exact numbers, a good faith effort is sufficient to establish the number of class members." *Burke*, 2000 WL 336518, at *2 (citing *Long v. Thornton Township High Sch. Dist. 205*, 82 F.R.D. 186, 189 (N.D. Ill. 1979)). The plaintiff's good faith estimate must be more than mere speculation. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989); *Burke*, 2000 WL 336518, at *2.

Jenkins argues that CST is a business of substantial size that uses printed form documents to engage in the practice of retaining

5

funds for government distribution, and that this use of forms allows me to infer the existence of a sufficiently large class of plaintiffs. *See Swiggett v. Watson*, 441 F. Supp. 254, 256 (D. Del. 1977) (establishing numerosity in a case challenging the constitutionality of a state vehicle title transfer statute on the basis of the state's use of printed forms to facilitate the transfers). However, the *Swiggett* plaintiff challenged the constitutionality of a law authorizing the use of a form, thereby effectively challenging every instance a printed form was used to complete a transfer. Jenkins, on the other hand, argues that because CST, in a single instance, used a printed form to collect funds from her and then improperly retained those funds, and because it used the same form with other customers, a sufficient number of plaintiffs in her proposed class must exist. She does not challenge the form itself; unlike *Swiggett*, there is no necessary connection between the use of a form and Jenkins' claim.

Jenkins' argument amounts to a conclusory allegation that, because she was harmed and CST had many other customers, other class members must exist. "Such speculation cannot support class certification." *Burke*, 2000 WL 336518, at *2 (internal quotation marks omitted); *see also Roe v. Town of Highland*, 909 F.2d 1097, 1100 (7th Cir. 1990). Furthermore, Jenkins cannot satisfy the numerosity requirement without showing that other persons besides herself, whether identifiable or not, are similarly situated.

*Burke*, 2000 WL 336518, at *2 (holding that "membership in a class [will not be presumed] on the mere theoretical possibility that such members exist"). Because there is insufficient evidence of numerosity, I need not consider the other requirements of Rule 23.[2]

### III.    PCFS' Motion to Dismiss

Jenkins' amended complaint names PCFS as a defendant in three counts, all of which PCFS moves to dismiss. On a motion to dismiss, I accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *City Nat'l Bank of Fla. v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir. 1994). Dismissal is proper only where it appears beyond doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A plaintiff need not put all of the essential facts in the complaint and may add them by affidavit or brief "in order to defeat a motion to dismiss if these facts are

---

[2] Although not dispositive here, I note that CST's attack on Jenkins' adequacy to represent the class fails. CST contends that because Jenkins does not clearly comprehend the entire situation surrounding her complaint and because she cannot read well, she cannot adequately represent the class. However, the Supreme Court has rejected insufficient knowledge on the part of the named plaintiff as a basis for denying class certification. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966); *see also Avila v. Van Ru Credit Corp.*, No. 94 C 3234, 1995 WL 41425, at *10 (N.D. Ill. Jan. 31, 1995) (finding class representative's unfamiliarity with case did not render him inadequate); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 676 (N.D. Ill. 1989) (noting that a lack of sophistication does not necessarily render a class representative inadequate).

consistent with the allegations in the complaint." *Hentosh v. Herman M. Finch Univ.*, 167 F.3d 1170, 1173 (7th Cir. 1999). Additionally, documents attached to the pleadings as exhibits are considered part of the pleadings. Fed. R. Civ. P. 10(c).

## A.    TILA

In Count I, Jenkins alleges four separate violations of TILA.[3] First, she alleges that the 1999 mortgage improperly calculated points and fees which unlawfully placed the mortgage outside of TILA protection. Second, she alleges the 1999 mortgage failed to disclose a balloon payment as required by TILA and its implementing regulation, 12 C.F.R. § 226 ("Regulation Z"). Third, she alleges that the 1999 mortgage violated TILA as amended by HOEPA by not explicitly excluding a prepayment penalty for refinancing by the same creditor as required. Fourth, she claims that PCFS has improperly denied the right to rescind the 1999 mortgage.

PCFS argues that Jenkins' TILA claims are barred by the one year statute of limitations under TILA, 15 U.S.C. § 1640(e). TILA actions must be brought within one year from the date of the violation. *Dowdy v. First Metro. Mortgage Co.*, No. 01 C 7211, 2002 WL 745851, at *1 (N.D. Ill. Jan. 29, 2002) (Holderman, J.). "A credit transaction is consummated for the purposes of TILA when the plaintiffs become contractually obligated on a credit transaction, in this case, the consummation being the closing of the loan." *Id.*

---

[3] Count I also names Mercantile as a defendant.

(citations omitted). Jenkins filed her original complaint on November 29, 2001, almost two years after the loan was consummated on December 27, 1999. Jenkins argues that her TILA claims are not barred because TILA provides for a three-year statute of limitations on rescission claims. 15 U.S.C. § 1635(f). A "lender's failure to rescind is a separate violation of TILA[.]" *Dowdy*, 2002 WL 745851, at *2. However, TILA violations that are subject to the one year statute cannot be overcome merely by linking them to a rescission claim. *Id.* Jenkins' TILA claims, other than for rescission, fail under the one-year statute of limitations.

The rescission claim, though timely, fails for a different reason. Jenkins pleaded that she paid the 1999 mortgage with the 2000 mortgage. Jenkins has also attached a Discharge of Mortgage, Ex. T, to her amended complaint, that states that the 1999 mortgage has been satisfied. She has admitted, therefore, that the 1999 mortgage no longer exists. Jenkins cites several cases from the Eastern District of Pennsylvania that she claims stand for the proposition that a loan that has been paid off may be rescinded. *See, e.g., In re Wright*, 127 B.R. 766, 770-71 (E.D. Pa. 1991). However, I am persuaded by authority in this district holding that, if a loan has been paid off, "there is nothing to rescind because the mortgage [that the plaintiff] want[s] rescinded has been released and no longer exists." *Coleman v. Equicredit Corp. of Am.*, No. 01 C 2130, 2002 WL 88750, at *2 (N.D. Ill. Jan. 22, 2002)

9

(Leinenweber, J.) (citing *King v. California*, 784 F.2d 910, 913 (9th Cir. 1986)). Because there is nothing to rescind, Jenkins' rescission claim also fails. *Id.*

Even if the non-rescission TILA claims were not time-barred, the claims against PCFS would fail because PCFS is not liable as an assignee on the facts pleaded by Ms. Jenkins. TILA protection is triggered on a mortgage loan secured by a consumer's principal dwelling if the total points and fees payable by the consumer at or before closing will exceed the greater of either eight percent of the total loan amount or $400. 15. U.S.C. § 1602(aa). The TILA Statement provided to Jenkins and signed by her on December 27, 1999, indicates the amount financed as $92,046 and an Annual Percentage Rate (APR) of 13.458%. Ex. D. In contrast, the TILA Statement sent to PCFS indicates the amount financed as $94,005 and an APR of 13.129%. Ex. U. Similarly, the HUD-1 provided to the plaintiff, Ex. E, indicates a mortgage broker fee of $6,459 and that PCFS was provided a HUD-1 indicating a broker fee of only $4,500, Ex. V. In her amended complaint, Jenkins admits that PCFS received materially different disclosures, Exs. U-V., than those provided to her at the closing. Am. Compl. ¶¶ 28-29.

PCFS admits that under the Itemization of Amount Financed, provided to Jenkins, Ex. D, the pre-paid finance charges total $9,204 while the total amount financed totals $92,046, which would place the 1999 mortgage above the eight percent TILA trigger (9,204

10

÷ 92,046 = 10%). PCFS also argues, however, that the documents that Jenkins admits were sent to PCFS, Exs. U-V, indicate a pre-paid finance charge of $7,245 and the amount financed as $94,005, which would place the 1999 mortgage *under* the 8% TILA trigger (7,245 ÷ 94,005 = 7.7%). Jenkins does not dispute PCFS' arithmetic or deny that the documents provided to PCFS do not implicate a TILA loan. Rather, Jenkins claims that PCFS, as an assignee of Mercantile, is responsible for the TILA violations of Mercantile.

An assignee's liability under TILA depends on the terms of § 1641. "This section makes an assignee liable to an obligor only for those TILA violations that are apparent on the face of the documents it receives as a part of the assignment." *Coleman*, 2002 WL 88750, at *2. "Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under [] TILA." *Herrara v. North & Kimball Group, Inc.*, No. 01 C 7349, 2002 WL 253019, at *3 (N.D. Ill. Feb. 20, 2002) (Aspen, J.) (citing *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998)).

Jenkins argues that, regardless of what documents were actually provided to PCFS, PCFS must have learned that the loan was actually a TILA loan subject to its provisions. Essentially, she argues that discrepancies between the documents provided to her and the documents provided to PCFS should have triggered more investigation by PCFS. However, cases adhere strictly to the face-

11

of-the-document requirement. *Balderos v. City Chevrolet*, 214 F.3d 849, 853 (7th Cir. 2000). "Section 1641 makes it clear that a creditor can rely on the documentation it receives from its assignor and has no obligation to investigate its accuracy[.]" *Coleman*, 2002 WL 88750, at *2 (citing *Taylor*, 150 F.3d at 694). Additionally, something that is "apparent only by virtue of special knowledge, whether about the practices of other firms [] or its own practices, [] is not apparent on the face of the [document] itself." *Balderos*, 214 F.3d at 853 (internal citations and quotation marks omitted). Even if I assume that PCFS was aware of the discrepancy, no violation was apparent on the face of the documents sent to PCFS.

One court found that TILA claims survived a motion to dismiss where the "apparent violation" was based on the comparison of two contracts and the plaintiff's complaint did not clarify whether both were assigned or only one was actually assigned. *Herrara*, 2002 WL 253019 at *3. Thus, because it was conceivable that both were assigned, the discrepancy might have appeared on the face of the documents. Here, however, Jenkins clearly pleaded that the documents provided to her and those provided to PCFS were materially different. Am. Compl. ¶¶ 29-30. Moreover, Jenkins pleaded that the loan documents which were sent to PCFS differed from those provided at the closing. Am. Compl. ¶ 28. Jenkins' amended complaint does not allow for the reasonable possibility

12

that PCFS was assigned both sets of documents, because only one loan was allegedly assigned. *Cf. Herrera*, 2002 WL 253019, at *3 (unclear whether both contracts were both assigned). I need not stretch the allegations beyond their sensible and reasonable implications. *Crowe v. Joliet Dodge*, No. 00 C 8131, 2001 WL 811655, at *1 (N.D. Ill. July 18, 2001) (Hibbler, J.). Therefore, even if the TILA claims were not time-barred, Jenkins fails to state a claim against PCFS.

### B.     Consumer Fraud Act

In Count III, Jenkins alleges that PCFS[4] is responsible for violations of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"). To prove a violation of ICFA, a plaintiff must show: that (1) the defendant engaged in a deceptive act or practice, (2) the defendant intended that the plaintiff rely on that deception, (3) the deception occurred in the course of conduct involving trade or commerce, and (4) the act proximately caused damage to the plaintiff. *Harris v. Castle Motor Sales*, No. 00 C 5455, 2001 WL 477241, at *4 (N.D. Ill. May 7, 2001) (Hibbler, J.). In Count III of her amended complaint, Jenkins brings two types of ICFA claims: TILA-derivative violations and RESPA-derivative violations.

I address the TILA-derivative violations first. In her amended complaint, Jenkins alleges that PCFS, as an assignee, is liable for

---

[4] Jenkins also names Mercantile, Victoria, Kostic and Bell in Count III.

the TILA violations of Mercantile and that PCFS subsequently demanded and received the prepayment penalty included in the 1999 mortgage in violation of TILA. The Illinois Supreme Court has recently and squarely addressed the issue of assignee liability under ICFA in TILA-derivative claims and held that, where an assignee is free from liability under federal law, the assignee is free from liability under ICFA. *Jackson v. South Holland Dodge, Inc.*, 755 N.E.2d 462, 469-70 (Ill. 2001); *see also Dowdy*, 2002 WL 745851, at *3 (holding that the "Illinois Supreme Court has specifically considered and refused to impose liability as to assignees who were not the perpetrators of the fraud").

Although the law is clear that an assignee who is not liable under TILA is not liable under ICFA, Jenkins responds to the motion to dismiss by arguing that PCFS is liable as a "co-originator" of the loan and not as an assignee because the loan was assigned to PCFS prior to the closing of the loan. Jenkins attempts to draw an analogy to an Illinois appellate case holding that because an assignee provided funds to a borrower it was a "co-originator" of the loan and, therefore, chargeable with knowledge of unlawful aspects of the loan. *Winter & Hirsch, Inc. v. Passarelli*, 259 N.E.2d 312, 315 (Ill. App. Ct. 1970).

Although it may be reasonable to infer that PCFS provided funds because the loan was assigned to it before the closing, Jenkins' reliance on *Passarelli* for anything further is misplaced.

14

*Passarelli* addressed whether the defense of usury is available against the plaintiff who claimed to be the holder in due course of a promissory note and, therefore, claimed to have taken it free from the defense of usury. It does not address TILA or TILA-derivative claims. Furthermore, I am aware of no TILA cases that suggest that assignee liability depends on the timing of the assignment relative to TILA. Any such distinction would only frustrate the Congressional goal, adopted by the Illinois Supreme Court as to Illinois law, of narrowing assignee responsibility. *See Jackson*, 755 N.E.2d at 469. In this respect, TILA differs from RESPA, which I discuss below.[5]

The Illinois Supreme Court, however, recognized that its holding in *Jackson* does not provide a "blanket immunization of assignees from liability under the Consumer Fraud Act. A plaintiff would be able to maintain a cause of action under the Consumer Fraud Act where the assignee's fraud is active and direct."

---

[5] The purpose of TILA is to assure a meaningful disclosure of credit terms. 15 U.S.C. § 1601(a). However, in enacting its 1980 amendments of TILA, Congress expressed the additional purpose of narrowing the scope of assignee liability. *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 200 (3d Cir. 2000); *cf. Ford Motor Credit Co. v. Cenance*, 452 U.S. 155 (1981) (holding that an assignee was a creditor under the *pre*-1980 TILA because of a substantial involvement in the transaction) (emphasis added). RESPA's guiding principle is to protect home buyers from material non-disclosures in settlement statements and abusive practices in the settlement process. *Morequity v. Naeem*, 118 F. Supp. 2d 885, 900 (N.D. Ill. 2000) (Gettleman, J.). However, RESPA is more expansive because it applies not only to the actual settlement process, but to the servicing of federally related mortgage loans. *Id.*

*Jackson*, 755 N.E.2d at 470 (classifying such action as pre-assignment fraud). Liability hinges on whether a plaintiff alleges that the assignee "directly participated in a scheme," not merely the timing of the assignment. *Id.* at 471. Conclusory allegations of actual knowledge are "at best nothing more than a claim that [the assignee] knowingly received the benefits of another's fraud." *Id.* ICFA does not provide a cause of action for knowing receipt of benefits in violation of the Act. *Id.* Here, Jenkins has not alleged any participation in an active scheme or direct action by PCFS, so she cannot state a claim of direct or pre-assignment fraud against PCFS. *Id.* at 470.

Finally, a comparison between TILA and the Consumer Lending Act, 15 U.S.C. § 1667 *et seq.*, suggests that the timing of an assignment relative to mortgage closings does not affect assignee liability. Under the Consumer Lending Act, "'an assignee may be a lessor for purposes of the regulation in circumstances where the assignee has substantial involvement in the lease transaction.'" *Jordan v. Schaumburg Toyota*, No. 97 C 6697, 1999 WL 116224, at *8 (N.D. Ill. Feb. 26, 1999) (Williams, J.) (citing the Consumer Lending Act's Regulation M, 12 C.F.R. § 213.2 Official Staff Commentary § 2(h)(3)). "In contrast, [] TILA allows suits against assignees 'only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement[.]'" *Id.* (citing 15 U.S.C. § 1641(a)). Although the

16

Consumer Lending Act's Regulation M addresses lessors and not lenders as in TILA, TILA's Regulation Z contains no similar expansion. Therefore, the possibility of "substantial involvement" in a transaction, such as providing funds at the closing, cannot be used as a basis of assignee liability under TILA. The Illinois Supreme Court has expressed its intent to limit TILA-derived assignee liability under Illinois law to the limits mandated by federal law. *Jackson*, 755 N.E.2d at 468. I find, therefore, that the Illinois Supreme Court would hold that TILA's coverage regarding assignees is not as extensive as the Consumer Lending Act's Regulation M, and I dismiss Jenkins' TILA-derived ICFA claims against PCFS in Count III.

Jenkins also alleges violations of RESPA, 12 U.S.C. §§ 2601 *et seq.*, against PCFS in Count III. Jenkins alleges that PCFS, as an assignee of Mercantile, is responsible for illegal payments to Victoria including broker fees and "yield spread premium" she claims constituted nothing more than kickbacks for referral of business in connection with the 1999 loan. RESPA provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a). However, even if a referral fee has been paid, there is no violation of RESPA for the payment of a fee by a lender to its duly appointed agent for services actually performed in the

making of the loan "so long as a disclosure is made of the existence of such an arrangement to the person being referred[.]" 12 U.S.C. § 2607(c). In other words "it is perfectly legal under RESPA for a lender to pay a mortgage broker for services the broker has performed in connection with a real estate transaction but it is illegal for a lender to pay a broker a referral fee for sending business the lender's way." *Michalowski v. Flagstar Bank*, No. 01 C 6095, 2002 WL 113905, at *3 (N.D. Ill. Jan. 25, 2002) (Holderman, J.).

Here, Jenkins claims that PCFS is responsible, as an assignee, for the RESPA violations of Mercantile, the original lender of the 1999 contract. The question then is whether an assignee may be responsible for the original lender's violations. RESPA regulations promulgated by the Department of Housing and Urban Development state that:

> Lender means, generally, the secured creditor or creditors named in the debt obligation and document creating the lien. For loans originated by a mortgage broker that closes a federally related mortgage loan in its own name in a table funding transaction, the lender is the person to whom the obligation is initially assigned at or after settlement.

24 C.F.R. § 3500.2(b)). "Table funding means a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." 24 C.F.R. § 3500.2.

18

PCFS argues that it is not a lender under RESPA and it cites an Illinois Circuit case for the proposition that, if an assignee is not liable under TILA, it is not liable under RESPA because the RESPA definition of lender does not include assignees. *See Bank of N.Y. v. Heath*, No. 98-CH-8721, 2001 WL 1771825, at *3 (Ill. Cir. Ct. Oct. 26, 2001). However, the case that the *Heath* decision cites for this proposition holds only that the definition of lender "would not include the Defendant, as a subsequent assignee." *Murray v. First Nat'l Bank of Chicago*, 239 B.R. 728, 736 (E.D. Pa. 1999). It is unclear whether the original lender in *Murray* was a mortgage broker or exactly when the defendant was assigned the loan. In any event, *Murray* concerned only the general definition of lender and did not consider the specific "mortgage broker loan" definition of a "lender." Here, the allegations of the complaint bring PCFS within the more specific definition. Jenkins alleges that Mercantile is a mortgage broker and loan originator and that she received the 1999 mortgage from Mercantile, which assigned the loan to PCFS. She alleges that the loan was assigned before the transaction, but the documents provided to PCFS are dated the same day as the settlement, so it is possible that this was a table funding transaction. If so, it is possible for Jenkins to prove that PCFS, as an assignee, was a lender for the purposes of RESPA. Additionally, the discrepancy between Jenkins' allegation and the documents provided to PCFS allows for the possibility that PCFS was

19

assigned the loan at a time significantly before the closing. If so, it may be possible for Jenkins to alternately prove that PCFS was the lender named in the original loan documents creating liability for PCFS independent of assignee status.

Because Jenkins alleges actions by PCFS that violate RESPA, I find that her ICFA claims that are derivative of RESPA withstand the motion to dismiss. Jenkins will ultimately have to prove that the yield spread premium was paid merely for the referral of business and was not compensation for services performed, but this is a factual dispute inappropriate for a motion to dismiss. *Michalowski*, 2002 WL 113095, at *4.

### C. Breach of Fiduciary Duty

Jenkins alleges that PCFS, as an assignee of Mercantile, is responsible for Mercantile's inducement of Victoria and Kostic to breach their fiduciary duties to Jenkins. She claims that Victoria and Kostic violated their fiduciary duty as mortgage brokers when they violated RESPA by receiving an illegal yield spread premium in connection with the 1999 mortgage. PCFS argues that the allegation should be dismissed because Jenkins has demonstrated no basis for assignee liability. However, I have already found that Jenkins has stated a valid claim of PCFS' assignee liability under RESPA, so I deny the motion to dismiss the portion of Count IX directed against PCFS.

20

## IV.     CST's Motion to Dismiss

Jenkins alleges that CST violated ICFA by repeatedly collecting money for the purpose of paying governmental fees, and then pocketing the money instead of disbursing it (Count V). She also alleges a common law cause of action of "money had and received" against CST for its collection and pocketing of the governmental fees (Count VI). Finally, Jenkins alleges that CST violated RESPA, 12 U.S.C. § 2607 by overcharging for governmental fees. She claims that because inconsistent loan documents were provided to her for the 1999 mortgage, she cannot determine whether CST collected $92.50, Ex. E, or $116, Ex. D, for recording the mortgage and recording the release of the mortgage, Am. Compl. ¶ 25. In either case she alleges that CST only disbursed $33.50 for recording the mortgage and nothing for recording releases and pocketed the balance, Am. Compl. ¶ 26. Similarly, due to discrepancies regarding the 2000 mortgage documents provided to her, Jenkins cannot determine whether CST charged $100.50, Ex. K, or $79.00, Ex. T, for recording the mortgage and recording the release of the mortgage. Am. Compl. ¶ 59. In either case, it only actually disbursed $67 and pocketed the difference. Am. Compl. ¶ 59.

### A. ICFA and RESPA

CST argues that Jenkins cannot maintain a violation of ICFA because CST has not violated RESPA. Jenkins, however, claims that

her ICFA claim is independent of RESPA, Resp. at 11-12, and separately alleges RESPA violations (Count VII). I address the RESPA claims first.

The specific provision at issue here is § 8(b) of RESPA, 12 U.S.C. § 2607(b), and a portion of RESPA's implementing regulation ("Regulation X"), 24 C.F.R. § 3500.14(c). Section 2607 is a prohibition against kickbacks and unearned fees that specifically provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. 2607(b). RESPA authorizes the Department of Housing and Urban Development ("HUD") Secretary to "prescribe such rules and regulations" and "to make such interpretations . . . as may be necessary to achieve the purposes of [RESPA]". *Id.* § 2617(a). In accord with that authority, HUD promulgated a regulation incorporating the language of section 2607(b) and adding that "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charges is an unearned fee and violates this section." 24 C.F.R. § 3500.14(c).

"According to the Seventh Circuit, a violation of this section must involve a division of unearned fees or charges by at least two parties; it does not include overcharging by a single party."

22

*Krzalic v. Republic Title Co.*, No. 01 C 9979, 2002 WL 1008465, at *1 (N.D. Ill. May 17, 2002) (Kocoras, J.) (citing *Echevarria v. Chicago Title & Trust Co,*, 256 F.3d 623, 630 (7th Cir. 2001)). Here, Jenkins has not alleged any division of fees between two or more parties. She has only alleged an overcharging by a single party, which does not implicate RESPA under *Echevarria*. Jenkins argues that *Echevarria* is no longer good law because the Seventh Circuit allowed for the possibility that a different HUD policy could change its decision. *See Echevarria*, 256 F.3d at 630 ("Absent a formal commitment by HUD to an opposing position, we decline to overrule our established RESPA § 8(b) case law."). Jenkins argues that in its October 2001 policy statement, HUD has made a formal commitment to include single party overcharging as a RESPA violation and that the policy statement is on point because it specifically refers to the *Echevarria* holding. *See* 66 Fed. Reg. 53052-01. However, this specific argument has been considered and rejected by other courts. *See Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 267 (4th Cir. 2002); *Krzalic*, 2002 WL 1008465, at *2. "Deference might well be due Regulation X or HUD's statement of policy if § 8(b) were ambiguous. But the text of the statute controls in this case." *Boulware*, 291 F.3d at 267 (internal citations omitted). "[HUD's] new statement [] does nothing to change the legal landscape for cases such as this within our Circuit." *Krzalic*, 2002 WL 1008465, at *2. Nonetheless, Jenkins

23

argues that *Echevarria*, *Boulware*, and *Krazalic* are incorrect and that I should afford *Chevron* deference to HUD's policy statement in order to serve the broad policy goals of RESPA. *See, e.g., Schuetz v. Bank One Mortgage Corp.*, 292 F.3d 1004, 1013 (9th Cir. 2002) (finding that because RESPA was ambiguous regarding whether "yield spread premiums" were per se illegal, *Chevron*-style deference should be afforded to HUD's policy statement implementing a two-prong test for "yield spread premiums"). The cases cited by Jenkins in support of her proposition do not involve questions of single party overcharging in light of the 2001 HUD policy statement. This issue has been squarely addressed by the Fourth Circuit and a court in this District, and I agree with those well reasoned opinions. Jenkins fails to state a valid RESPA claim against CST.

CST argues that, because there is no violation of federal law, the ICFA claim must also fail. *See Lanier v. Associates Fin.* Inc., 499 N.E.2d 440, 447 (Ill. 1986) (holding that compliance with TILA is a defense to liability under ICFA). However, CST's reliance on *Lanier* is misplaced. *Lanier* involved the question of whether ICFA imposed higher disclosure requirements than TILA. The Illinois Supreme Court in *Lanier* held only that, where TILA was implicated and the defendant was in compliance, Illinois law does not impose greater disclosure requirements than those mandated by federal law. *Naeem*, 118 F. Supp. 2d at 893. The *Lanier* court did not hold, as

24

CST seems to contend, that merely because a party does not violate a federal law, it does not violate ICFA.

Section 2 of ICFA prohibits the use of unfair or deceptive practices by the use of misrepresentation, fraud or the concealment of a material fact with the intent that others rely on the deception. 815 ILCS 505/2. Despite the specificity requirement of pleading fraud, we have a notice pleading system, where a "suit should not be dismissed so long as it is possible to hypothesize facts, consistent with the complaint, that would make out a claim for relief." *Petri v. Gatlin*, 997 F. Supp. 956 (N.D. Ill. 1997) (Grady, J.) (internal quotation marks omitted). Here, Jenkins alleges that CST deliberately and dishonestly charged her for a service that it did not provide. If CST deliberately charged Jenkins for a service it had "no intent to provide or knew was unnecessary," this could constitute a violation of ICFA. *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496, 504 (N.D. Ill. 2000) (Bucklo, J.) (ruling in a third-party fee splitting case where RESPA was also violated). Intent is a question of fact not appropriate in a motion to dismiss. *Id.* Therefore, Jenkins has alleged a violation of ICFA sufficient to withstand a motion to dismiss.

### B.     Money Had and Received

CST claims that Jenkins fails to state a claim for money had and received because she did not allege the necessary element of

compulsion that the cause of action requires. *See Buitta v. First Mortgage Corp.*, 578 N.E.2d 116, 118 (Ill. App. Ct. 1st Dist. 1991) (holding that compulsion is necessary to state a claim of money wrongfully had and received in Illinois); *see also Union Pac. R.R. Co. v. Village of S. Barrington*, 958 F. Supp. 1285, 1298 (N.D. Ill 1997) (Gettleman, J.) (adopting and citing *Buitta*). Jenkins responds by citing another Illinois appellate court case that holds that *Buitta* and *South Barrington* are incorrect. *Kaiser v. Fleming*, 735 N.E.2d 144, 147-48 (Ill. App. Ct. 2d Dist. 2000). The *Kaiser* court concluded that *Buitta* incorrectly relied on *Peterson v. O'Neil*, 255 Ill. App. 400 (1st Dist. 1930), for the compulsion requirement because *Peterson* held only that "compulsion is one way of establishing the cause of action. Nothing in *Peterson* supports the defendant's assertion that one *must* allege compulsion." *Kaiser*, 735 N.E.2d at 148 (emphasis in original). Similarly, *Kaiser* states that *South Barrington* is incorrect because it relies on *Buitta* for the same proposition. *Id. Kaiser* states that a cause of action for money had and received is properly maintained where a "defendant has received money which in equity and good conscience belongs to the plaintiff." *Id.* (internal quotation marks omitted).

Where I exercise supplemental jurisdiction over state law claims, I must apply state law to substantive issues. *Timmerman v. Modern Indus., Inc.*, 960 F.2d 692, 696 (7th Cir. 1992). I must determine the content of state law as the Illinois Supreme Court

would interpret it. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 636 (7th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Without clear guidance from the Illinois Supreme Court, I must use my best judgment to make this determination, and I may consider the decisions of lower Illinois Courts and courts of other jurisdictions. *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 417 (7th Cir. 1997). I am not bound by the decision of any particular Illinois appellate court; I determine the content of state law at the "state, not the local, level." *Allstate Ins. Co.*, 285 F.3d at 636.

Another Illinois court has held that compulsion is not required to maintain a cause of action as long as the plaintiff alleges fraud or deceit. *See Union Nat'l Bank of Chicago v. Goetz*, 35 Ill. App. 396, 402 (1st Dist. 1889) ("[M]oney obtained by fraud or under a fraudulent contract, may be recovered at law, in an action for money had and received."). More recently, the high courts of other states have recognized a cause of action for money had and received based on fraud or deceit. *Parsa v. New York*, 474 N.E.2d 235, 237 (N.Y. 1984) (noting that a cause of action for money had and received is available where one obtains money from another through deceit); *cf. Richland County v. North Dakota*, 180 N.W.2d 649, 655 (N.D. 1970) (noting that although fraud would suffice to maintain a cause of action for money had and received, the action could still be maintained without fraud).

The reasoning of *Kaiser* is also consistent with the fraud exception to the voluntary payment doctrine. Illinois law recognizes the "voluntary payment doctrine," which "in its general formulation, holds that a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution." *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir. 2001). However, "Illinois recognizes the traditional defenses to the voluntary payment doctrine—fraud and mistake of fact—defenses designed to identify instances in which the countervailing policies of traditional restitutionary principles should prevail." *Id.* at 668. The fraud exception to the voluntary payment doctrine reinforces *Kaiser*'s interpretation of *Peterson*. *Peterson* holds that payments "made under duress [] may be recovered back from the party receiving it, and it makes no difference that the payment was made with full knowledge." *Peterson*, 255 Ill. App. at 402. For this proposition, *Peterson* relies on cases holding that, if money is considered voluntarily paid, the payment cannot be recovered. *See, e.g.*, *Illinois Glass Co. v. Chicago Tel. Co.*, 85 N.E. 200, 201 (Ill. 1908); *County of LaSalle v. Simmons*, 10 Ill. 513, 515 (1849). The fraud exception, like the compulsion exception in *Peterson*, serves "traditional restitutionary principles" in cases where payment can no longer be considered voluntary. I predict that the Illinois Supreme Court would follow the reasoning of the *Kaiser*

28

court and conclude that compulsion is not a necessary element of a cause of action for money had and received.

Here, Jenkins alleges that CST has unlawfully retained overcharged fee payments which are rightfully owed to Jenkins, and I have already found that Jenkins properly alleged fraud against CST. I find that Jenkins has sufficiently pleaded a claim of money had and received.

CST argues that I should not exercise supplemental jurisdiction over the money had and received claim because the claim represents a novel issue of Illinois law that should not be litigated as a class action claim, but I have denied certification of a class action against CST, so the argument is moot.

### Conclusion

I DENY Jenkins' motion to certify a class action against CST (Counts V, VI, and VII). I GRANT PCFS's motion to dismiss Jenkins' TILA claims (Count I) and DENY PCFS's motion to dismiss Jenkins' ICFA and RESPA claims (Counts III and IX). I DENY CST's motion to dismiss Jenkins' ICFA claims against it (Count V), I DENY CST's motion to dismiss the money had and received claim (Count VI), but GRANT CST's motion to dismiss the RESPA claim against it (Count VII).

Enter Order:

_Elaine E. Bucklo_

**Elaine E. Bucklo**
United States District Judge

Dated:    September 26, 2002

29